

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 23, 2023

**BY ECF**
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Igal Ben Hanan*, 21 Cr. 444 (JSR)

Dear Judge Rakoff:

    The Government respectfully submits this letter in advance of the sentencing of Igal Ben Hanan ("Ben Hanan" or the "defendant") in the above-referenced matter. For the reasons explained below, a sentence below the Stipulated Guidelines Range of 70 to 87 months' imprisonment would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**I. Background**

    1. <u>Offense Conduct</u>

    This case arose from a long-running investigation by the Federal Bureau of Investigation ("FBI") into Israeli-based organized criminal syndicates. The investigation identified Ben Hanan as an international money launderer and narcotics trafficker. Along with his co-defendants Yosef Cohen and Vague Tergalstanyan, Ben Hanan laundered funds internationally, and also himself engaged in international narcotics sales.

    Ben Hanan's first money laundering transaction with law enforcement occurred in 2017. In fall 2017, a confidential source (the "CS") explained to Ben Hanan that the CS needed to move the proceeds of drug sales in the United States through Israel to Colombia to purchase more drugs. Ben Hanan agreed to facilitate the movement of the proceeds. In November 2017, Ben Hanan used a third party to deliver approximately $80,000 to a CS in Bogota, Colombia, after United States law enforcement wired the funds to Israel. (PSR ¶ 14).

    In early January 2018, Ben Hanan agreed with a CS and UC to facilitate the pickup of drug proceeds in Australia and transfer the funds to Israel. On January 24, 2018, a UC met with two individuals in Melbourne, Australia—as directed by Ben Hanan—and provided them $60,000. Three days later, Ben Hanan met with a CS in Israel and gave the CS $60,000. In total, UCs paid Ben Hanan $14,000 for these two money laundering transactions—that is, about 10% of the funds that were laundered. (PSR ¶ 15).

In addition to those laundering transactions, Ben Hanan engaged in significant narcotics transactions with law enforcement while located abroad:

- On March 22, 2018, Ben Hanan met a UC and a CS in a hotel in Antwerp, Belgium, and sold them ten kilograms of powder methylenedioxymethamphetamine ("MDMA") on consignment. (PSR ¶ 16).

- On February 18, 2019, Ben Hanan met several UCs in Amsterdam, Netherlands, and sold them 50,000 MDMA pills. (PSR ¶ 17).

- On June 19, 2019, Ben Hanan met UCs in Amsterdam and sold them approximately 100,000 MDMA pills. (PSR ¶ 20).

During the February 18, 2019 meeting in Amsterdam, Ben Hanan said that he wanted one of the UCs to meet an individual named "Joe Cohen", a reference to co-defendant Cohen, who lived in California and who could help the UC launder large amounts of cash. (PSR ¶ 17).

On March 19, 2019, Ben Hanan, Cohen, Tergalstanyan, and a UC met in Los Angeles. During the meeting, Ben Hanan said that he wished to sell MDMA in Las Vegas with the UC. Ben Hanan also expressed an interest in smuggling cocaine into Israel, explaining that Ben Hanan expected cocaine could sell for up to $70,000 per kilogram. COHEN explained during the meeting that he laundered approximately $3 million every month. (PSR ¶ 18).

Thereafter, Cohen and Tergalstanyan arranged with the UCs to conduct several pickups of narcotics proceeds from various parts of the United States. In the course of these drug money pick ups in 2019 and 2020, Ben Hanan and Cohen also conspired to obtain a fraudulent U.S. visa for Ben Hanan. In particular, the defendants arranged for the UCs to provide Cohen with $150,000 in cash—money the UCs made clear had not yet been "washed through the system"—to be used to help make it appear that Ben Hanan had legitimate business investments so that he could obtain a business visa to reside in the United States. Later, in 2020, Cohen transferred funds back to the UCs as repayment, through wire transfers from a supposed construction company. (PSR ¶ 21).

2. Procedural History

On July 8, 2021, a grand jury returned an indictment charging Ben Hanan with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). On January 5, 2023, Ben Hanan pleaded guilty, pursuant to an agreement, to Count One of the indictment. The parties stipulated in the plea agreement that 70 to 87 months' imprisonment is the applicable Guidelines range (the "Stipulated Guidelines Range"). The Presentence Report, like the plea agreement, calculated the applicable Guidelines range as 70 to 87 months' imprisonment. The Probation Office recommends a sentence of 18 months' imprisonment. (PSR at 24). Ben Hanan requests a sentence of time served.

## II. Discussion

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelm ing majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a

rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. The Court Should Impose a Sentence Below the Stipulated Guidelines Range

In this case, the nature and seriousness of the defendant's offense, the need to promote respect for the law, and to provide just punishment, all weigh in favor of a sentence below the Stipulated Guidelines Range. Such a sentence is appropriate to serve the purposes of sentencing. The wide-ranging, deleterious effects of the narcotics trade are well-documented, and the defendant was an essential component of an international criminal enterprise that trafficked narcotics for personal enrichment. Money laundering transactions are serious because such transactions are "part of a chain, a link . . . which, if you took them away, these various links, the drug traffickers would find it extremely difficult to operate." *United States v. Rosenthal Hidalgo*, No. 13 Cr. 413 (JGK), Dec. 15, 2017 Sent. Tr., ECF No. 266. Without individuals like the defendant laundering the proceeds, the purpose underlying the distribution of narcotics—making money for those who would engage in such conduct—would be defeated. Those who participate in laundering proceeds of narcotics trafficking and/or other illicit activities facilitate those activities by, among other things, assisting in concealing and disguising the nature and origins of the funds. And the defendant sold substantial quantities of narcotics himself. For these reasons, and to reflect the seriousness of the offense, impose just punishment, and promote respect for the law, a sentence below the Stipulated Guidelines Range is warranted.

### III. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence below the Stipulated Guidelines Range of 87 to 108 months' imprisonment is sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____/s/_____
Micah F. Fergenson
Assistant United States Attorney
(212) 637-2190

cc:   Jeffrey Pittell, Esq. (by ECF)